M. RIVAS ENTERPRISES, INC., d/b/a
M. Rivas Food Store, Appellant,

v.

Lydia GAYTAN, Appellee.

No. 13–99–067–CV.

Court of Appeals of Texas,
Corpus Christi.

May 11, 2000.

Rehearing Overruled Aug. 24, 2000.

John G. Escamilla, Rodriguez, Pruneda, Tovar, Calvillo & Garcia, Ezequiel Tovar, McAllen, for appellant.

Everardo Abrego, Pharr, for appellee.

Before Chief Justice SEERDEN and Justices DORSEY and YAÑEZ.

## OPINION

DORSEY, Justice.

M. Rivas Enterprises, Inc. d/b/a M. Rivas Food Store, appellant, appeals a judgment for $15,000.00 entered on a jury verdict in favor of Lydia Gaytan. Gaytan slipped and fell in appellant's store in Mission, Texas. She sued appellant for failing to clean a puddle of liquid from the floor, creating an unreasonably dangerous condition which caused her fall. Appellant contends that the verdict was unsupported by the evidence, and specifically, that Gaytan presented legally or factually insufficient evidence that appellant had knowledge of, or should have had knowledge of, the dangerous condition in its store.

The standards for legal and factual sufficiency of evidence are well established. In reviewing the legal sufficiency of the evidence, we consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding, and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex. 1988). If there is any evidence of proba-

tive force to support the finding, the finding will be upheld. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996).

■ A no evidence point may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Juliette Fowler Homes, Inc. v. Welch Assocs.,* 793 S.W.2d 660, 666 n. 9 (Tex.1990) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX. L. REV. 361, 362–63 (1960)). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex.1992).

In reviewing the factual sufficiency of the evidence, we examine all the evidence, and will set aside a verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). The evidence is "insufficient" to support a fact finding if the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Jaffe Aircraft Corp. v. Carr,* 867 S.W.2d 27, 29 (Tex.1993).

■ When the injured party is an invitee, the elements of a slip and fall claim are:

(1) Actual or constructive knowledge of a condition on the premises by the owner or occupier;

(2) That the condition posed an unreasonable risk of harm;

(3) That the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and

(4) That the owner or occupier's failure to use such care proximately caused the plaintiff's injury.

*Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 936 (Tex.1998); *Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992); *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 296 (Tex.1983); *Whalen v. Condominium Consulting and Management Services, Inc.,* 13 S.W.3d 444, 447 (Tex.App.—Corpus Christi, 2000, pet. for review filed Mar. 13, 2000).

■ In the case of *Adam Dante Corp. v. Sharpe,* 483 S.W.2d 452, 454–55 (Tex.1972), the Texas Supreme Court accepted section 343 of the Restatement (Second) of Torts (1965) as a summary description of the duty of reasonable care that an occupier of premises owes to invitees. *Whalen,* at 447. Section 343 provides that a possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitees; (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect them against the danger. The test is whether a reasonably prudent owner/occupier would have recognized the dangerous defect, which must have been in existence long enough to allow for its discovery." *Id.*

■ In order to be liable, the premises owner/operator must have had actual or

constructive knowledge of a premises defect. *Motel 6 G.P ., Inc. v. Lopez,* 929 S.W.2d 1, 3 (Tex.1996). This requirement can be met in one of three ways. *Keetch,* 845 S.W.2d at 265. An invitee may prove: (1) that the owner/operator put the foreign substance on the floor; (2) that the owner/operator knew that it was on the floor and negligently failed to remove it; or (3) that the substance was on the floor so long that, in the exercise of ordinary care, it should have been discovered and removed. *Id.* at 264. This requirement can be shown through direct or circumstantial evidence. *Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d at 936; *Whalen,* 13 S.W.3d at 447.

■ With the legal principles in mind, we turn to the facts of this case. Lydia Gaytan testified that she went to the Rivas Food Store to return a gallon of bad milk. She slipped on water that was on the floor near one of the cash register lanes. She said that she could see that the water was coming from iceboxes which were leaking water. She said that she saw some wet towels five to six feet from the icebox. Gaytan also testified that it was not raining the day she fell in the store.

Cynthia Evans also testified that she was in the store on the day Ms. Gaytan fell. She also testified that it was not raining when the incident occurred, though she could not remember if it had rained at all that day. Evans testified that Gaytan fell because the floor was wet, but that she did not know where the water came from. She also testified that Gaytan slipped about five or six feet from a freezer in the front of the store where they kept the ice. Both women testified they saw no warning signs or other indication that the floor was slippery. Evans testified that she remembered seeing a towel by the ice machine.

At one time, Evans worked at the M. Rivas Food Store, but had not worked there for around a year at the time of Gaytan's fall. Evans testified that she had seen Rivas employees put towels by that ice machine before because there was leak-

age. She also stated that after the fall, she heard the store manager scolding the employees who were supposed to mop up wet floors or put up cones. We find all this evidence both legally and factually sufficient to support the jury's verdict.

The seminal case in this area is *Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934 (Tex.1998), where the Texas Supreme Court held the evidence legally insufficient to support a finding that macaroni salad had been on a Wal–Mart floor long enough to charge Wal–Mart with constructive notice of the condition. *Id.* at 936. No witnesses testified that they had seen or were aware of the spilled macaroni before Gonzalez slipped on it. *Id.* The court held that evidence that the cooked macaroni salad was covered by "a lot of dirt," had shopping cart tracks through it, and "seemed like it had been there awhile" did not make it more likely than not that salad had been on the floor long enough to charge the store with constructive notice of it. *Id.* The court noted that "meager circumstantial evidence from which equally plausible but opposite inferences may be drawn is speculative and thus legally insufficient to support a finding." *Id.* at 934. It reasoned:

> Dirt in macaroni salad lying on a heavily-traveled aisle is no evidence of the length of time the macaroni had been on the floor. That evidence can no more support the inference that it accumulated dirt over a long period of time than it can support the opposite inference that the macaroni had just been dropped on the floor and was quickly contaminated by customers and carts traversing the aisle.

*Id.* at 937. Ultimately, the court held that the evidence adduced amounted to "no evidence" that Wal–Mart had constructive notice of the actual existence of spilled macaroni. *Id.* at 938.

■ We find the facts of this case distinguishable from those in *Wal–Mart.* First, a leaking ice machine is far different

from spilled macaroni. A store owner with knowledge that an ice machine leaks has a duty to ensure that the known hazard does not create an unreasonably dangerous condition—*i.e.*, a slippery floor. Evidence was offered that the store owner/operator not only knew of the ice machine's leak, but that someone had put towels down near the ice machine on that very day to soak up the water. That evidence does not lead equally to another inference, as in the case with the dirty macaroni salad. Gaytan's evidence showed that she fell approximately five or six feet from an ice machine that had towels down beside it, apparently to soak up leaking water. She also provided evidence from a former store employee who said that the store typically placed towels around the machine when it leaked, and that the store manager scolded the employee responsible for cleaning up spills. We hold this amounts to some evidence that the appellant had actual or constructive knowledge of a condition on the premises that posed an unreasonable risk of harm, and thus hold that the evidence is legally sufficient to support the jury's finding.

Likewise, we find the evidence is factually sufficient. In factual sufficiency review, we examine all the evidence and will set aside a verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain*, 709 S.W.2d at 176. We have already demonstrated how the plaintiff's evidence was sufficient to support the jury's finding. Appellant offered testimony from its store manager, who stated that the iceboxes at issue did not have "drains," so that water could not have dripped out of them. Also, he testified that they had placed floor mats close to the iceboxes because the ice would drip when people took it out of the box. He also testified that it had rained all day on the day that Gaytan fell in the store. He testified that they had never used towels to soak up leaks from the iceboxes—only the mats. When asked if he "scolded" the employee responsible for mopping up spills, he said, "Well, no ... I told him, 'You know your job, you know if you ever see water, and I told you lots of times.'"

The jury was well within its province to believe plaintiff's testimony and disbelieve the defendant's. We do not find its verdict to be against the great weight and preponderance of the evidence. Accordingly, we affirm the judgment of the trial court.