NUMBER 13-99-701-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


BRIAN LYNN MILLER , Appellant,


v.


WAL-MART STORES, INC. , Appellee.

___________________________________________________________________


On appeal from the 206th District Court

of Hidalgo County, Texas.

___________________________________________________________________


O P I N I O N


Before the Court En Banc (1)

Opinion by Justice Dorsey


Brian Lynn Miller appeals from a judgment notwithstanding the verdict entered in favor of Wal-Mart Stores, Inc. Miller
challenges the judgment by three issues. We reverse the judgment of the trial court and render judgment for the plaintiff.

Miller, who was employed by a plumbing company, was at a Wal-Mart store to show a fellow employee, Leslie Cox, where
to install an eyewash machine. A Wal-Mart manager walked Cox and Miller to a door and told them to go ahead and do
what they needed to do. Miller and Cox entered a storeroom where Wal-Mart employees were unloading merchandise. 
There was a stairway leading to a mezzanine area, where the machine was to be installed, and boxes had been placed on the
stairs. They went up the stairs, with Miller leading the way. Once upstairs, Miller showed Cox where to install the
machine, and then they started down, with Cox leading. On the way down, Miller fell backwards, resulting in injuries to
his neck and right shoulder.

The court presented the jury with a charge that provided, in part:

With respect to conditions of the premises, WAL-MART STORES INC., was negligent if-

a. The condition posed an unreasonable risk of harm; and

b. WAL-MART STORES, INC., had actual knowledge of the danger; and
c. BRIAN LYNN MILLER did not have actual knowledge of the danger; and

d. WAL-MART STORES, INC., failed to adequately warn BRIAN LYNN MILLER of the condition; and

e. WAL-MART STORES, INC. failed to make the conditions reasonably safe.

The jury found Miller thirty percent negligent and Wal-Mart seventy percent negligent, and awarded Miller $74,681.75 in
damages. Wal-Mart filed a motion for judgment notwithstanding the verdict, again arguing that Miller's actual knowledge
of the danger precluded recovery. The trial court granted Wal-Mart's motion.

By his first and second issues, Miller contends the trial court erred in granting judgment notwithstanding the verdict
because there was evidence to support each element of his cause of action.

A judgment notwithstanding the verdict is proper if there is no evidence to support one or more of the jury findings on
issues necessary to liability. Tex. R. Civ. P. 301; Brown v. Bank of Galveston, Nat. Ass'n, 963 S.W.2d 511, 513 (Tex.
1998). We review all the evidence in a light most favorable to the verdict and make every reasonable inference in favor of
the verdict. Formosa Plastics v. Presidio Engineers, 960 S.W.2d 41, 48 (Tex. 1998). We will reverse the judgment n.o.v.
if there is more than a scintilla of competent evidence to support the jury's findings. Gregorcyk v. Al Hogan Builder, Inc.,
884 S.W.2d 523, 525 (Tex. App.--Corpus Christi 1994, writ denied).

Normally, when a premises liability case involves an independent contractor, the independent contractor is treated as a
business invitee for purposes of determining the standards by which the premises keeper may be held negligent. Shell
Chemical Co. v. Lamb, 493 S.W.2d 742, 746 (Tex. 1973); Montes v. Indian Cliffs Ranch, Inc., 946 S.W.2d 103, 107 (Tex.
App.--El Paso 1997, pet. denied). Though Miller was an independent contractor and should have been treated as an invitee,
the jury was charged as if Miller was a licensee rather than an invitee.

Miller did not object to the elements as set forth in the charge and never complained that the charge improperly required
him to prove he did not have actual knowledge of the danger. In fact, Miller's own proposed charge to the jury contains the
same elements, including the element that he not have actual knowledge of the danger, as the charge given to the jury. 

 The El Paso Court of Appeals has held that "[i]n the absence of an objection, the sufficiency of the evidence is usually
measured against the statement of law contained in the charge, even if it is defective." Household Credit Serv., Inc. v.
Driscol, 989 S.W.2d 72, 88 (Tex. App.-El Paso 1998, pet. denied); see also Hammerly Oaks, Inc. v. Edwards, 958 S.W.2d
387, 393 (Tex. 1997) (court of appeals erred in reviewing the sufficiency of the evidence to support damages by its own
measure, rather than the measure submitted to the jury). We agree with this approach, and thus, conduct this no evidence
review by measuring the evidence against the charge actually submitted.

As to a licensee, a premises owner is liable only if "the condition posed an unreasonable risk of harm; [the] defendant had
actual knowledge of the danger; [the] plaintiff did not have actual knowledge of the danger; and [the] defendant failed to
exercise ordinary care to protect plaintiff from danger, by both failing to adequately warn plaintiff of the condition and
failing to make that condition reasonably safe." See State v. Williams, 940 S.W.2d 583, 584-85 (Tex. 1996); Comm. on
Pattern Jury Charges, State Bar of Texas, Texas Pattern Jury Charges-Premises PJC 66.4 (2000). 

Wal-Mart asserts there is no evidence to support the jury's finding that Miller did not have actual knowledge of the
dangerous condition of the stairway. We disagree.

Miller testified as follows, regarding the circumstances when he went up the stairs on the day of his accident:

Q. As you are going up the stairs, did you notice anything unusual about the stairs or anything different from when you had
been there [the] previous week?

A. There were Wal-Mart employees in the back room, receiving stock or unloading a truck or whatever they were doing
that day. And there is a lot of material coming in. They were placing boxes on the stairs.

Q. Did you actually see them place boxes on the stairs?

A. Well, I can't remember exactly if I seen them, but there was boxes on the stairs.

Q. Do you recall which side of the stairs that the boxes were stacked on?

A. Both sides, I believe.

Miller also testified that on his way down the stairs that day, he noticed that they were slippery or slick. He said that he
remembered they were not slippery when he was there a few days earlier. He testified that on his way down the stairs, he
had to release the handrail because the boxes were blocking it. At that point, his foot caught one of the boxes, he slipped
on the floor, and fell down the steps.

On cross-examination, the attorney for Wal-Mart attempted to establish that Miller had, in fact, noticed on his way up the
stairs not only that the boxes were stacked on the stairs, but that the handrail was partially blocked and that the stairs were
slippery. The following testimony was taken:

Q. So you agree with me, Mr. Miller, that you recognized at least two things: One, the stairs were slippery; and number
two, there were boxes that created a hazard for you getting up the stairs; right?

A. We didn't think of it that way then, no, sir.

And later:

Q. Okay. Can you explain to me, Mr. Miller, why it is that the box didn't block your access to the handrail on the way up?

A. They didn't use the handrail going up. We didn't comment on the slipperiness of the stairs until we was halfway,
three-fourths of the way up.

Q. The stairs got slippery; is that what you are saying?

A. Yes.

Q. But you couldn't get to the handrails supposedly because they were blocked; is that it?

A. That's it.

Q. Is this about the same midway point where you fell coming down?

A. Probably so, sir.

This amounts to some evidence that Miller did not actually know of the dangerous condition of the stairway.

The jury found that Miller did not have actual knowledge of the condition of the stairway at the time he fell. The only way
the trial court was justified in entering judgment n.o.v. on this finding is if there existed no evidence upon which the jury
could have found that Miller did not have actual knowledge of the dangerous condition of the steps prior to his fall. See
Tex. R. Civ. P. 301; Brown v. Bank of Galveston, N.A., 963 S.W.2d at 513. If the evidence is viewed in the light most
favorable to the verdict, considering only evidence and reasonable inferences therefrom that tend to support it, there is
sufficient evidence for the jury to find that Miller did not have actual knowledge of the dangerous condition of the steps
prior to his fall.

In premises liability cases involving licensees such as this one, the plaintiff must show that he did not have actual
knowledge of a condition of the premises that posed an unreasonable risk of harm to the licensee. State v. Williams, 940
S.W.2d 583, 584 (Tex. 1996); State Dep't of- Highways and Pub. Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 1992). 
"'[K]nowledge' of the risk involved in a particular condition implies not only that the condition is recognized as dangerous,
but also that the chance of harm and the gravity of the threatened harm is appreciated." See Restatement (2d) of Torts §
342, cmt. a (1974). Miller testified that although he noticed the boxes on the stairway, he did not notice that the stairway
was slippery until at least half-way up the stairs. Moreover, he did not notice that the handrail was blocked by the boxes
until he was coming down the stairway. It is reasonable to infer, therefore, that Miller did not comprehend the fact that the
stairway was "unreasonably" dangerous until the moment he fell--when he was forced to release the handrail at the moment
the stairs became slippery and that his pathway was obstructed by a box. Miller testified that it was the combination of
slipping, tripping on the box, and being unable to use the handrail that caused him to fall. We hold that this amounts to
some evidence that Miller did not have actual knowledge of the unreasonably dangerous condition of the stairway prior to
his accident. See also Palais Royal, Inc. v. Gunnels, 976 S.W.2d 837, 844 (Tex. App.--Houston [1st Dist.] 1998, pet.
dism'd.) (holding that inferences from the circumstantial evidence amounted to some evidence that plaintiff had no actual
knowledge of the dangerous condition). 

The jury considered Miller's actions on the stairs and found him to be thirty percent negligent. His award was reduced
accordingly in conformity with the comparative negligence statute. If the ambiguous evidence of what he knew of the
danger while on the stairwell would bar his recovery as a matter of law, the comparative negligence statute would be
effectively nullified and would signal a return to the days when any negligence of the plaintiff defeated recovery. The trial
court erred in granting defendants' motion for judgment nov. We reverse and render judgment for the plaintiff.

It is ORDERED, ADJUDGED and DECREED that BRIAN LYNN MILLER have and recover the sum of $53,904.20 from
defendant, WAL-MART STORES, INC. together with pre-judgment interest at the rate of 10% per annum beginning on
January 19, 1995 and ending July 16, 1999, in the amount of $24,219.95, for a total judgment of $48,124.15. Both trial and
appellate costs are assessed against Wal-Mart Stores, Inc.

Our disposition of this point of error renders moot the remaining points of error and cross points presented in the briefs.

 

J. BONNER DORSEY

Justice


Dissenting opinion by Justice Rodriguez joined by Retired Chief Justice Seerden and Justice Castillo.

Publish .

Tex. R. App. P. 47.3.

Opinion delivered and filed

this 9th day of August, 2001.

1. Retired Chief Justice Robert J. Seerden assigned to this Court by the Chief Justice of the Supreme Court of Texas
pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).








NUMBER 13-99-701-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________

BRIAN LYNN MILLER , Appellant,


v.


WAL-MART STORES, INC. , Appellee.

___________________________________________________________________


On appeal from the 206th District Court

of Hidalgo County, Texas.

__________________________________________________________________


DISSENTING OPINION

Before the Court En Banc (1)


Dissenting Opinion by Justice Rodriguez


I respectfully dissent from the Court's opinion because the majority, in concluding there is legally sufficient evidence to
support the verdict, makes an inference contrary to the undisputed evidence. 

When considering a no-evidence point, the court must review the evidence in a light most favorable to the verdict, making
every reasonable inference in its favor. See Formosa Plastics v. Presidio Engrs., 960 S.W.2d 41, 48 (Tex. 1998). Though
the Texas Supreme Court has often said that a court "must disregard all evidence that is contrary to a jury finding in
performing a no-evidence review, that is not to say that courts must disregard undisputed evidence that allows of only one
logical inference." Universal Life Ins. Co v. Giles, 950 S.W.2d 48, 73-74 (Tex. 1997); Provident Am. Ins. Co v. Castaneda,
988 S.W.2d 189, 206-07 (Tex. 1998) (Gonzalez, J. dissenting) (there are circumstances in which courts must consider
evidence contrary to the verdict in a legal sufficiency review); see Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex.
2001) (court must first examine record for evidence supporting verdict, ignoring all evidence to the contrary; if there is no
such evidence, the court then examines the entire record to see if the contrary finding is established as a matter of law). A
no-evidence point may only be sustained when the record discloses one of the following: (1) a complete absence of
evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered
to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the
evidence establishes conclusively the opposite of a vital fact. See Juliette Fowler Homes, Inc. v. Welch Assocs., 793
S.W.2d 660, 666 n.9 (Tex. 1990) (citing Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38
Tex. L. Rev. 361, 362-63 (1960)); M. Rivas Enterprises, Inc. v. Gaytan, 24 S.W.3d 402, 404 (Tex. App.--Corpus Christi
2000, pet. denied). Obviously, in the fourth situation, "it is impossible to conclusively establish the opposite of a vital fact
without considering evidence contrary to the verdict." Castaneda, 988 S.W.2d at 206 (Gonzalez, J. dissenting). 

In the present case, the majority, by disregarding the evidence contrary to the verdict, makes an unsustainable inference in
light of undisputed evidence to the contrary. 

As noted by the majority, Miller testified he noticed that boxes were placed on the stairway as he ascended the stairs. He
also noticed the stairs seemed "slippery or slick." Though the majority acknowledges Miller noticed the stairs were
slippery, it maintains that because he did not notice this condition until half-way up the stairs, there is some evidence he did
not have actual knowledge of the dangerous condition. It is undisputed, however, that Miller had already observed both the
slickness of the stairs and the presence of the boxes along the stairway when he began to descend the stairs. Thus, the
evidence is uncontradicted that, at the time his injury occurred, Miller was aware the stairs were slick and that they were
partially obstructed with boxes. Thus, the evidence conclusively establishes Miller had actual knowledge of the dangerous
condition. 

The majority further contends there is some evidence that Miller did not have knowledge of the dangerous condition in that
"he did not notice that the handrail was blocked by the boxes until he was coming down the stairway." According to the
majority, the jury could have reasonably inferred "that Miller did not comprehend the fact that the stairway was
'unreasonably' dangerous until the moment he fell-when he was forced to release the handrail at the moment the stairs
became slippery and that his pathway was obstructed by a box." The majority's inference, however, is contrary to the
undisputed evidence in the record that Miller was aware of the slickness of the stairs and the presence of the boxes along
the stairsbefore attempting to descend them. 

Miller testified he could not get to the handrail because it was blocked. This was probably about the midway point on the
stairs. Miller did not testify that he was not aware of the danger of having to release the handrail to get around the boxes
when he began descending the stairs. 

The majority also notes that when asked if he recognized that the slippery stairs and boxes created a hazard for getting up
the stairs, Miller answered, "[w]e didn't think of it that way then, no, sir." The majority, however, omits testimony
following that question and answer in which Miller testified as follows:

Q. Okay. I would like an answer to my question please, Mr. Miller. Despite the fact that you are a trained professional
whose number one responsibility, you have told us, is your own personal safety, you did not take any action to remove the
boxes or to ask that the stairs be cleaned or anything, did you?

A. No, sir.

Q. You took a chance, didn't you?

A. Yes, sir, to do one little job.

Q. You took a chance, didn't you?

A. Yes, sir.

The majority's inference that Miller did not appreciate the chance of harm and the gravity of harm is contrary to Miller's
direct testimony. I do not believe that, in order to find the existence of some evidence in a no evidence review, a court of
appeals should make an inference that ignores the existence of undisputed evidence directly to the contrary. See Giles, 950
S.W.2d at 73-74. 

I would hold Miller failed to present any evidence he did not have actual knowledge of the dangerous condition, to wit, a
slick stairway with boxes stacked on it. Because Miller failed to prove an element of his cause of action as set forth in the 
jury charge, I would hold the trial court did not err in granting judgment notwithstanding the verdict. 

NELDA V. RODRIGUEZ

Justice


Retired Chief Justice Robert J. Seerden and 

Justice Errlinda Castillo join in this dissenting opinion.



Publish .

Tex. R. App. P. 47.3.



Dissenting Opinion delivered and 

filed this 9th day of August, 2001.

1. Retired Chief Justice Robert J. Seerden assigned to this Court by the Chief Justice of the Supreme Court of Texas
pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).