02-10-367-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00367-CV

 


 
 
 William H. Alexander and Dora Alexander
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 Joe Hughes, Phil Johnson, Randy Catlin, David
 Martston, Tom Fitzgerald, Ray Boutwell, Thomas E. Venhaus, Blaine Kidwell,
 Mark Kyle, Jeanette Bitner, Tamy Kigon, and Robert J. Wilson
 
 
  
 
 
 APPELLEES 
 
 


 

----------

 

FROM THE 30th
District Court OF Wichita COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          Appellants,
William H. and Dora Alexander, appeal the trial court’s judgment notwithstanding
the verdict (JNOV), contending in one issue that the evidence supports the jury’s
verdict finding that appellants’ carport conforms with the applicable deed
restrictions of their neighborhood.  We reverse the trial court’s JNOV and
render judgment for appellants.

Background
Facts

          Appellants
own a house in the Park Place Addition (Park Place) of Iowa Park, Texas.  The
dispute underlying this case arose after they built a carport in front of their
house.  Appellees are several homeowners in Park Place who sued appellants for
violating the Park Place deed restrictions.

          While
preparing to build the carport, appellants contacted Tommy Key—one of the
original Park Place developers and the sole remaining developer and member of
the Park Place architectural committee at that time—to obtain the architectural
committee’s approval, which the deed restrictions require for construction
projects.  After discussing the anticipated carport with William Alexander, Key
said he approved if the next door neighbors approved, and he either waived the
deed restrictions’ requirement that appellants submit written plans or told
William that plans were not needed “at this time.”  After appellants began
constructing the carport, one of the appellees contacted Key and advised him
that he thought the carport was going to violate the deed restrictions.[2] 
Key called William and asked him to stop construction of the carport until the
issue could be resolved; by that time appellants had already begun construction. 
William declined to stop, saying “he was too far along.”

          Appellees,
as Key’s designees, sued appellants, claiming that the carport violated Section
21 of the Park Place deed restrictions, which provides, “Fences.  No
fences, enclosure, or part of any building of any type or nature whatsoever
shall be constructed, erected, placed, or maintained closer to the front line
than the front building setback line applicable and in effect to each lot . . .
.”

          At
trial, William admitted that the carport extended at least fifteen feet in
front of the twenty-five foot front yard setback line.[3] 
During the charge conference, appellees asked the trial judge to include in the
jury charge an instruction that the “applicable and in effect” setback line referenced
in section 21 of the deed restrictions is twenty-five feet, the setback line set
forth in section 613.3 of the Iowa Park zoning ordinance.  Appellants opposed
the request, arguing the applicable setback line is the five-foot carport
setback line in sections 601.2(P)(3) and 613.2(D) of the zoning ordinance.  The
trial court granted appellees’ motion and instructed the jury that, as a matter
of law, the only applicable setback line is twenty-five feet:  “The front
building setback line set forth in section 21 of the Deed Restrictions is the
Minimum Front Yard Setback of 25’ set forth in section 613.3 of the City of
Iowa Park Zoning Ordinance.”  Appellants objected to the charge, but the trial court
overruled the objection.

          The
jury nevertheless returned a verdict in appellants’ favor.  Appellees moved for
a new trial or JNOV, contending that the evidence that the carport extended
past the twenty-five foot building setback line was undisputed.  After a
hearing on the motions, the trial court granted appellees’ JNOV motion and rendered
a final judgment for appellees that included a mandatory injunction directing
appellants to remove the carport.

          In
this appeal, appellants contend that the trial court erred by granting
appellees’ JNOV motion and by construing the restrictive covenants in a manner
that incorporates section 613.3(E), but not sections 601.2(P)(3) and 613.2(D),
of the zoning ordinance.

Appellants’
Issue

          Appellants’
sole issue is that “the trial court erred in granting [appellees’] Motion for
[JNOV] because, under any appropriate analysis, [a]ppellants’ carport did not
violate the deed restrictions.”  According to appellants, the trial court’s
JNOV turned on its erroneous interpretation of the phrase, “front building
setback line applicable and in effect to each lot,” in section 21 of the deed
restrictions; in other words, but for the trial court’s erroneous
interpretation of the deed restrictions, it would never have determined that
the evidence is legally insufficient to support the jury’s finding that the
carport does not violate the deed restrictions because the evidence is
undisputed that the carport does not extend past the five foot setback line in
sections 601.2(P)(3) and 613.2(D) of the zoning ordinance.

Standards of Review

A trial court may disregard a jury verdict
and render a JNOV if no evidence supports the jury’s findings on issues
necessary to liability or if a directed verdict would have been proper.  See
Tex. R. Civ. P. 301; Tiller v. McLure, 121 S.W.3d 709, 713 (Tex. 2003); Fort
Bend County Drainage Dist. v. Sbrusch, 818 S.W.2d 392, 394 (Tex. 1991).  In
determining whether the trial court erred by rendering a JNOV, we view the
evidence in the light most favorable to the verdict under the well-settled
standards that govern legal sufficiency review.  See Wal-Mart Stores, Inc.
v. Miller, 102 S.W.3d 706, 709 (Tex. 2003).

Evidence
supporting a jury’s verdict is legally insufficient only when (1) the record
discloses a complete absence of evidence of a vital fact; (2) the court is
barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact; (3) the evidence offered to prove a vital fact
is no more than a mere scintilla; or (4) the evidence establishes conclusively
the opposite of a vital fact.  Uniroyal Goodrich Tire Co. v. Martinez,
977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S. 1040 (1999);
Robert W. Calvert, “No Evidence” and “Insufficient Evidence” Points of Error,
38 Tex. L. Rev. 361, 362–63 (1960).  In determining whether there is legally
sufficient evidence to support a finding under review, we must consider
evidence favorable to the finding if a reasonable factfinder could and
disregard evidence contrary to the finding unless a reasonable factfinder could
not.  Cent. Ready Mix Concrete Co. v. Islas, 228 S.W.3d 649, 651 (Tex.
2007); City of Keller v. Wilson, 168 S.W.3d 802, 807, 827 (Tex. 2005).

Interpretation
of Restrictive Covenants

          We
review a trial court’s interpretation of a restrictive covenant de novo.  Raman
Chandler Props., L.C. v. Caldwell’s Creek Homeowner’s Ass’n, 178 S.W.3d
384, 390–91 (Tex. App.—Fort Worth 2005, pet. denied).  We construe restrictive
covenants in accordance with general rules of contract construction.  Pilarcik
v. Emmons, 966 S.W.2d 474, 478 (Tex. 1998); Raman Chandler, 178
S.W.3d at 391; Dyegard Land P’ship v. Hoover, 39 S.W.3d 300, 309 (Tex.
App.—Fort Worth 2001, no pet.).

          When
construing contracts and other written instruments, our primary concern is to
ascertain the true intent of the parties as expressed in the instrument.  State
Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 433 (Tex. 1995); NP
Anderson Cotton Exch., L.P. v. Potter, 230 S.W.3d 457, 463 (Tex. App.—Fort
Worth, 2007, no pet.).  To ascertain the parties’ intent, we must examine and
consider the entire contract in an effort to harmonize and give effect to all
provisions so that none are rendered meaningless.  J.M. Davidson, Inc. v.
Webster, 128 S.W.3d 223, 229 (Tex. 2003); Potter, 230 S.W.3d at
463.  Courts should be particularly wary of isolating individual words,
phrases, or clauses and reading them out of context.  Beaston, 907
S.W.2d at 433.  Instead, “[w]e must construe contracts ‘from a utilitarian
standpoint bearing in mind the particular business activity sought to be served’
and ‘will avoid when possible and proper a construction which is unreasonable,
inequitable, and oppressive.’”  Frost Nat’l Bank v. L & F Dist., Ltd.,
165 S.W.3d 310, 312 (Tex. 2005) (quoting Reilly v. Rangers Mgmt., Inc.,
727 S.W.2d 527, 530 (Tex. 1987)).  In addition, we examine all writings
relating to the same transaction.  DeWitt County Elec. Coop., Inc. v. Parks,
1 S.W.3d 96, 102 (Tex. 1999); Fort Worth Transp. Auth. v. Thomas, 303
S.W.3d 850, 857 (Tex. App.—Fort Worth 2009, pet. denied) (holding that to
ascertain parties’ intent, all writings relating to the same transaction are
examined, harmonized, and given effect).

          In
analyzing words in a contract, we give them their ordinary, generally accepted
meanings unless the contract itself shows that the terms have been used in a
technical or different sense.  Doe v. Tex. Ass’n of Sch. Bds., Inc., 283
S.W.3d 451, 458–59 (Tex. App.—Fort Worth 2009, pet. denied).  A specific
contractual provision controls over a general provision.  City of The Colony
v. N. Tex. Mun. Water Dist., 272 S.W.3d 699, 722 (Tex. App.—Fort Worth
2008, pet. dism’d).  Lack of clarity or a disagreement among the parties as to
the contract’s interpretation does not render it ambiguous.  Universal
Health Servs., Inc. v. Renaissance Women’s Group, P.A., 121 S.W.3d 742, 746
(Tex. 2003); see also Leake v. Campbell, 352 S.W.3d 180, 184
(Tex. App.—Fort Worth 2011, no pet.) (holding that disagreement over
interpretation of restrictive covenant does not make it ambiguous).  Rather,
whether “a contract is ambiguous is a question of law that must be decided by
examining the contract as a whole in light of the circumstances present when
the contract was entered.”  Universal Health Servs., 121 S.W.3d at 746; see
also Raman Chandler, 178 S.W.3d at 391; Dyegard Land P’ship,
39 S.W.3d at 308–09.  “If, after the pertinent rules of construction are
applied, the contract can be given a definite or certain legal meaning, it is
unambiguous and we construe it as a matter of law.”  Frost Nat’l Bank,
165 S.W.3d at 312; see also Pilarcik, 966 S.W.2d at 478; Raman
Chandler, 178 S.W.3d at 391.  An unambiguous restrictive covenant should be
liberally construed to give effect to its purpose and intent.  Tex. Prop. Code
Ann. § 202.003(a) (West 2007); Dyegard Land P’ship, 39 S.W.3d at 308–09.

Analysis

Although section 21 of the Park Place deed
restrictions does not expressly reference the city zoning ordinance, both
parties construe the phrase, “the front building setback line applicable and in
effect to each lot,” as referring to the applicable regulations set forth in
the zoning ordinance.  They simply dispute which part of the zoning ordinance
applies.

Section
6 of the deed restrictions states, “No residential building shall be located
nearer to the front line . . . than the minimum setback required by the
subdivision regulations of the City of Iowa Park, Texas.”  Key testified that
the intent behind section 6 was to adopt setback provisions of the City of Iowa
Park “to the extent that we [the developers] said.”  Thus, the deed
restrictions contain no setback lines of their own; they defer to the zoning
code.

          Section
613.3(E) of the zoning ordinance for the residential zone in which appellants’
property is located states, “All structures shall have not less than a
twenty-five (25) foot front yard setback.”  Iowa Park, Tex., Code of Ordinances
ch. 14, art. 14.03, Ex. A, art. VI, § 613.3(E) (2010).  The Park Place plat
also has a twenty-five foot building setback line drawn on it.  However,
section 613.2(D) of the zoning ordinance, which applies to the same residential
zone, provides that carports must comply only with section 601.2(P), which sets
a setback line of five feet.  Id. §§ 601.2(P), 613.2(D) (2010).  Appellants’
carport extends between fifteen and eighteen feet past the twenty-five foot
front yard setback line listed in section 613.3(E) of the zoning ordinance;
thus, it terminates about seven to ten feet away from the property’s front curb
and is within the five-foot carport setback line provided in section
601.2(P)(3).

Appellees
contend that the “front building setback line” referenced in section 21 for
“fences, enclosure[s], or part[s]” of buildings unambiguously refers to the
“front yard setback line” applicable to “structures” in general set forth in section
613.3(E) of the zoning ordinance, and they read the phrase “any building of any
type or nature whatsoever” in section 21 as encompassing carports, thus subjecting
carports to the twenty-five foot front yard setback line described in section
613.3(E) of the zoning ordinance.  Appellants, on the other hand, interpret the
phrase “front building setback line applicable and in effect to each lot” as
encompassing not only the setback line in section 613.3(E) but also any of the
more specific setback lines for certain types of structures contained in the
zoning ordinance.  Thus, if the zoning ordinance prescribes a more specific setback
line other than the general one for “structures” in section 613.3(E), then
under section 21 of the deed restrictions, the more specific setback line would
apply.

          Much
of appellees’ interpretation of section 21 turns on their contention that the
phrase “front building setback line” is a term of art that is synonymous with the
phrase “front yard setback line” used in the ordinance.  But the term “front
building setback line” is not used anywhere in the zoning ordinance.  Additionally,
the deed restrictions do not define “front building setback line” as a synonym
of “front yard setback line,” nor do they in any other way link the two
phrases.  We find no indication in the deed restrictions that the term “front
building setback line” is used in the technical manner proposed by appellees.  See
Doe, 283 S.W.3d at 458–59.  Section 301 of the zoning ordinance to which
the deed restrictions apply defines “building line” as “[a] line established
beyond which no part of a building shall project, except as otherwise
provided by this ordinance.”  Iowa Park, Tex., Code of Ordinances ch. 14,
art. 14.03, Ex. A, art. III, § 301 (2010) (emphasis added).

          Appellees’
technical interpretation of the term has an exclusionary effect on other
provisions in the deed restrictions.  If section 21 establishes a setback line
beyond which no structure, including residential structures in general, may extend,
then the explicit setback restriction for residential structures under section
6 is unnecessary; such an interpretation would have the effect of simply
restating section 6, rendering it or section 21 superfluous and meaningless.  See
Pilarcik, 966 S.W.2d at 479; Alpert v. Riley, 274 S.W.3d 277, 288
(Tex. App.––Houston [1st Dist.] 2008, pet. denied) (op. on reh’g).

          Appellees
nevertheless contend that section 21 augments section 6; this argument
disregards the topical distinction between the two sections.  Section 6 begins,
“No residential building . . . .”  According to section 2 of the same deed
restrictions, a residential building is one that is “designed and intended for
occupancy by a single family.”  Section 6 then goes on to describe the setback
line for that type of structure.  Section 21, on the other hand, does not
mention residential buildings.  Instead, by its very wording, it is intended to
apply to structures that are typically appurtenant to residential buildings,
such as fences or outbuildings.  See Nicol v. Gonzales, 127 S.W.3d 390,
395 (Tex. App.––Dallas 2004, no pet.).  Appellees’ argument that section 21 was
meant to emphasize and clarify section 6 is not evident from a reading of the
entire document; appellees point to no language in the deed restrictions showing
that section 21 was intended to augment section 6.  See Alpert, 274
S.W.3d at 288.

          Reading
the deed restrictions in their entirety, the phrase, “front building setback
line applicable and in effect to each lot,” as used in section 21 means that all
applicable setback lines in the ordinance, including those that carve out
different setback lines applicable only to specific structures, such as
“fences, enclosure[s], and other part[s]” of buildings, apply to property in
Park Place.  Thus, the undisputed evidence that appellants’ carport does not
extend past the five foot carport setback line in section 601.2(P) of the
zoning ordinance supports the jury’s verdict that the carport does not violate
the Park Place deed restrictions.[4]  We conclude and hold
that the trial court improperly granted the JNOV because the evidence at trial supports
the jury’s verdict.  We therefore sustain appellants’ sole issue on appeal.

Conclusion

          Having
sustained appellants’ sole issue on appeal, we reverse the JNOV and render
judgment for appellants in accordance with the jury’s verdict.[5] 
See Tanner v. Nationwide Mut. Fire Ins. Co., 289 S.W.3d 828, 834 (Tex.
2009).

 

 

 

TERRIE LIVINGSTON

CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and GABRIEL, JJ.

 

DELIVERED:  February 23,
2012









[1]See Tex. R. App. P. 47.4.





[2]Key was not sure who
contacted him, but he thought it might have been Joe Hughes or Phil Johnson.





[3]Another witness testified
that the carport extended “[a]bout 18 feet” past the twenty-five foot front
yard setback line.





[4]Because appellants
objected to the trial court’s inclusion of the instruction in the charge
stating that the twenty-five foot setback applies to the carport, we are not
bound to consider the instruction given in our sufficiency analysis.  St.
Joseph Hosp. v. Wolff, 94 S.W.3d 513, 530 (Tex. 2003).





[5]The jury’s verdict
included an award of $7,812.50 for attorney’s fees.  Appellees did not file a
separate notice of appeal challenging that award.