

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

---

No. 02-23-00482-CV

---

MORGAN COUNTRYMAN, Appellant

V.

GERMANIA INSURANCE COMPANY, Appellee

---

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-309943-19

---

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

Appellant Morgan Countryman's back was injured in a car accident caused by an underinsured motorist. After Countryman's insurer—Appellee Germania Insurance Company—denied his claim for his excess damages, he sued. At trial, Countryman presented video deposition testimony from his orthopedic spine surgeon, who confirmed Countryman's need for two back surgeries and estimated his charge for those surgeries. Based on this testimony, the jury awarded approximately $50,000 for Countryman's future medical care. But the trial court found that there was legally insufficient evidence of the reasonable cost of such future medical care, and because the remaining jury-awarded damages were below the at-fault driver's $30,000 policy limit, the trial court entered a take-nothing judgment notwithstanding the verdict (JNOV).

The sole issue on appeal is whether, as the trial court implicitly found, the surgeon's testimony was legally insufficient to show the reasonableness of the cost of Countryman's future medical care. Because it was, we will affirm.

## I. Standard of Review

A JNOV is reviewed under a no-evidence standard. *Bank of Am., N.A. v. Eisenhauer*, 474 S.W.3d 264, 265 (Tex. 2015); *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009). We will uphold the trial court's JNOV if there was no evidence to support the disregarded jury finding or if the evidence conclusively established the opposite of the finding, but we will reverse the JNOV if more than a

scintilla of evidence supported the finding. *Tanner*, 289 S.W.3d at 830; *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003); *McDaniel v. Dindy*, 673 S.W.3d 24, 31 (Tex. App.—Fort Worth 2023, no pet.) (corr. op.).

At its core, the JNOV analysis asks whether the evidence at trial allowed reasonable and fair-minded individuals to differ in their conclusions. *Tanner*, 289 S.W.3d at 830. In answering this question, we view the evidence in the light most favorable to the jury's verdict. *Tanner*, 289 S.W.3d at 830; *Wal-Mart Stores*, 102 S.W.3d at 709; *McDaniel*, 673 S.W.3d at 31.

## II. Discussion

The JNOV entered in this case is based upon, among other grounds, the trial court's implicit conclusion that there was no evidence of the reasonableness of the cost of Countryman's future medical care.[1]

A jury's award for the cost of future medical care must be supported by evidence showing the reasonable probability that medical care will be necessary in the future and the reasonable cost of that care. *McDaniel*, 673 S.W.3d at 42. The reasonable cost of future medical care can be established by expert testimony on the

---

[1]Germania's motion for JNOV raised a secondary argument, i.e., that there was no evidence that Countryman's future medical care expenses would actually be incurred. The trial court, however, did not specify the basis for its JNOV. And although Countryman's appeal challenges both grounds for the JNOV, Germania does not reurge its secondary argument on appeal. Because we uphold the JNOV on Germania's primary argument—that there was insufficient evidence of the reasonable cost of future medical care—we need not address its secondary argument. *See* Tex. R. App. P. 47.1.

3

subject or by evidence of the reasonable cost of past medical care. *Id.* Within these broad evidentiary bounds, though, the amount of the award is left to the sound discretion of the jury. *Id.*

Countryman claims that more than a scintilla of evidence showed the reasonableness of the estimated cost of his future medical care. He points to two portions of his surgeon's deposition testimony for support:[2]

---

[2]The jury was shown video from the deposition, but the appellate record does not contain the video. Instead, the reporter's record substitutes transcript excerpts for Countryman's direct examination and page-and-line designations for Germania's cross-examination. But several of the deposition portions designated by page and line are missing from the appellate record.

Generally, "[a]n appellant bears the burden to bring forward an appellate record that enables the appellate court to determine whether [the] appellant's complaints constitute reversible error," and omitted portions of the record are presumed to support the trial court's judgment. *Cantu v. Seeman*, No. 01-09-00545-CV, 2012 WL 1564536, at *5 (Tex. App.—Houston [1st Dist.] May 3, 2012, pets. denied) (mem. op.) (rejecting cross-appellant's challenge to JNOV due to failure to provide complete appellate record and presuming that missing portions supported trial court's ruling); *see Enter. Leasing Co. of Hous. v. Barrios*, 156 S.W.3d 547, 549–50 (Tex. 2004) (noting that appellant bears the burden to bring forward the appellate record and that omitted portions are presumed to support the judgment). On the albeit incomplete record before us, Countryman has not shown reversible error on the merits of his appeal.

Of course, the incomplete record could have been avoided if the official court reporter had made "a full record of the proceedings"—which included the official court reporter's transcription of the videotaped deposition. Tex. R. App. P. 13.1(a); *see Ibarra v. State*, No. 05-09-01063-CR, 2011 WL 5042081, at *5 (Tex. App.—Dallas Oct. 25, 2011, no pet.) (not designated for publication) (noting that "[a] court reporter must generally make a full record of all proceedings"); *In re Estate of Arrendell*, 213 S.W.3d 496, 498 n.1 (Tex. App.—Texarkana 2006, no pet.) (describing the numerous "drawbacks that appear when . . . transcriptions are not made" of video deposition testimony).

4

- The surgeon stated that "[t]he estimate [for the surgeries] at th[at] point based on the numbers that [he had] used, which [were] based off Context 4 Healthcare data that's updated every couple of years, the estimate currently s[at] somewhere between 75,000 and 85,000 dollars . . . for the two surgeries and 90 days of postoperative care."

- When asked if he was "charging 30 percent to 40 percent more than the average cost in the Dallas/Fort Worth Metroplex for this surgery," the surgeon responded that he "d[id not] know where it f[e]ll[] on a bell curve" and "c[ould]n't give you that answer" but could "just tell you that [he] charge[d] between the 80th and 90th percentile for [his] procedural codes."

No other witnesses testified regarding the surgeries' cost, and no evidence was offered regarding the reasonable cost of Countryman's past accident-related medical care.[3] *See id.* (noting that "[t]he reasonable value of future medical care may be established by evidence of the reasonable value of past medical treatment" as an "alternative . . . to establishing the reasonable cost of future care . . . by expert testimony"). Nonetheless, Countryman contends that the two above-quoted excerpts of testimony from his surgeon were legally sufficient to establish the reasonableness of the cost of his future back surgeries.

We disagree; the quoted testimony is no evidence of the reasonableness of the anticipated charges for Countryman's back surgeries. Although the surgeon estimated what he anticipated that he would charge for such procedures, he neither confirmed

---

[3]Aside from the deposition testimony from Countryman's surgeon, no additional deposition testimony was offered. Countryman was the only witness who testified before the jury, and he did not estimate the cost of his potential back surgeries other than to state that he could not afford them.

that his estimate was reasonable nor gave the jurors sufficient information for them to evaluate its reasonableness.

The surgeon indicated that his estimate was "based off Context 4 Healthcare," but he did not explain what "Context 4 Healthcare" was or what data it contained. Countryman attempts to flesh out the nature of Context 4 Healthcare in his brief— citing other cases in which witnesses explained the database's function and how it relates to reasonableness—but we cannot look to the evidence offered in other cases to fill the gaps in evidence here. *Cf. In re Allstate Indem. Co.*, 622 S.W.3d 870, 874 (Tex. 2021) (orig. proceeding) (noting affiant's explanation of the parameters she input to pull data from Context 4 Healthcare, the proficiencies the database required, the information she obtained from the database, and how she used the data); *In re Baker*, No. 02-23-00133-CV, 2023 WL 3879669, at *2–3 (Tex. App.—Fort Worth June 8, 2023, orig. proceeding) (mem. op.) (noting that affiant "explained what [Context 4 Healthcare] is, how and when it obtains data, . . . the extent of data it maintains," the database's methodology, and how the affiant used the database's information).

Plus, the surgeon did not explain how he derived his estimate from the "Context 4 Healthcare data." While he stated that his estimate was "based off" that data, his estimate could have been an unreasonable multiple "based off" that data. Whether the surgeon's $85,000 to $95,000 estimate was, in fact, a reasonable multiple of the Context 4 Healthcare data is simply unknown; there is no evidence one way or the other.

6

The surgeon's testimony—that he charged "between the 80th and 90th percentile for [his] procedural codes"—did not clarify his estimate's reasonableness either. He gave no explanation for why he charged "between the 80th and 90th percentile," whether it was reasonable to do so, or what providers in lower percentiles would charge for the back surgeries.

Although the surgeon was not required to use magic words to identify his estimate (or some other amount) as the reasonable cost, *see, e.g.*, *Nat'l Freight, Inc. v. Snyder*, 191 S.W.3d 416, 422, 427 (Tex. App.—Eastland 2006, no pet.) (holding evidence sufficient to support future medical expenses when doctor estimated his charge and, asked if the charge was usual, testified that it "sounded about right"), Countryman was required to provide enough information for the jury to conclude that the estimate (or other amount) was, in fact, reasonable. *See McDaniel*, 673 S.W.3d at 39–42 (holding evidence insufficient when plaintiff testified to past medical expenses incurred and doctor provided estimates of future medical expenses, but doctor "made no comments on the *reasonableness* of any of th[o]se charges"). He failed to do so. And absent legally sufficient evidence of the reasonable cost of future medical care, the jury could not award it. *See id.* at 42. The trial court thus properly disregarded the jury's $50,000 award and entered a JNOV.

We overrule Countryman's sole issue.

7

### III.  Conclusion

Having overruled Countryman's sole issue, we affirm the trial court's judgment.

Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered:  June 13, 2024